UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:25-cr-00451-HEA ) |
| GARY GRAJALES-REYES, | ) ) ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant, Gary Grajales-Reyes, represented by defense counsel Isaac Dodd, and the United States of America (hereinafter "United States" or "Government"), represented by Assistant United States Attorney Hal Goldsmith and the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 through 3, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's fraudulent conduct targeting Washington University and its School of Medicine during the period January 2024 through May 2025, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. ELEMENTS:

As to Counts 1 - 3, Wire Fraud, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Defendant voluntarily and intentionally devised or participated in a scheme to defraud and to obtain money by means of materially false or fraudulent pretenses or representations from Washington University and its School of Medicine, as detailed in the Information;

2. The pretenses or representations were material, that is, they would reasonably influence a person to part with money;

3. Defendant did so with the intent to defraud; and,

4. In advancing, or furthering, or carrying out his scheme to defraud and to obtain money by means of false or fraudulent pretenses or representations, Defendant used or caused to be used an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

2

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The Washington University School of Medicine (hereinafter referred to as "WashU Medicine"), was the medical school of Washington University in St. Louis, located in the Central West End neighborhood of St. Louis, Missouri. The defendant, **GARY GRAJALES-REYES, MD, PhD** (hereinafter referred to as "**GRAJALES-REYES**"), was an Assistant Professor of Pathology & Immunology at WashU Medicine. Defendant **GRAJALES-REYES** maintained an office and research laboratory at WashU Medicine.

Beginning during in or about January 2024 and continuing through in or about May 2025, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendant, **GRAJALES-REYES,** devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from WashU Medicine and Washington University in St. Louis, Missouri, in an approximate amount of $412,163.54, by means of materially false and fraudulent pretenses, representations, and promises.

On one and more occasions, defendant **GRAJALES-REYES** submitted requisition requests to WashU Medicine for internal and external hard drives and graphics cards falsely claiming that the computer equipment was for defendant's WashU Medicine research laboratory. Relying upon the materially false requisition requests, WashU Medicine issued purchase orders to obtain the requested computer equipment from its vendor, B&H Photo located in New York City, New York. B&H Photo then shipped the requested computer equipment to defendant

3

**GRAJALES-REYES** at his WashU Medicine research laboratory, and issued its invoices to WashU Medicine which then paid B&H Photo for the computer equipment which had been ordered by and shipped to defendant. B&H Photo was unaware of Defendant's fraud scheme and believed the WashU Medicine purchase orders were for legitimate WashU Medicine purposes.

After defendant **GRAJALES-REYES** received the falsely obtained computer equipment from B&H Photo he would sell the equipment by two different methods, without the knowledge or authority of WashU Medicine. Defendant sold some of the computer equipment through his personal eBay site. Defendant also sold some of the computer equipment to an Amazon based third-party seller, All4Computers. Defendant used the money obtained by selling the computer equipment through eBay or through All4Computers for his own personal expenses unrelated to the work and operations of WashU Medicine, and without the knowledge or authority of WashU Medicine.

As a part of his scheme, and as a result of his scheme, defendant **GRAJALES-REYES** submitted approximately seventy-three (73) materially false requisition requests to WashU Medicine for internal and external hard drives and graphics cards, which included approximately seven-hundred and sixty-one (761) different computer parts which Defendant received and sold for his own personal gain. As a result of his scheme, WashU Medicine and Washington University paid approximately $412,163.54 for computer parts, which defendant then sold for money which he used for his own personal expenses, unrelated to the work and operations of WashU Medicine.

On or about March 11, 2025, within the Eastern District of Missouri and elsewhere, for the purpose of executing his scheme to defraud and to obtain money and property by means of

materially false and fraudulent pretenses, and representations, the defendant did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a payment in the amount of $8,414.92, which included payment of $5,588.20 for 10 Samsung external hard drives, which funds originated from Washington University's bank account ending in 5052 at Bank of America and which funds were transmitted via the internet to B&H Photo's bank account ending in 6952 at Wells Fargo Bank, NA.

On or about February 25, 2025, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations, the defendant did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a payment in the amount of $10,650.73, which included payment of $9,582.73 for 16 Sandisk external hard drives, which funds originated from Washington University's bank account ending in 5052 at Bank of America and which funds were transmitted via the internet to B&H Photo's bank account ending in 6952 at Wells Fargo Bank, NA.

On or about February 21, 2025, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations, the defendant did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a payment in the amount of $8,475.03, which included payment of $7,995.48 for 20 Sandisk external hard

drives, which funds originated from Washington University's bank account ending in 5052 at Bank of America and which funds were transmitted via the internet to B&H Photo's bank account ending in 6952 at Wells Fargo Bank, NA.

The parties agree that, for relevant conduct purposes and through his scheme to defraud, defendant **GRAJALES-REYES** caused WashU Medicine and Washington University to pay approximately $412,163.54 for computer parts which defendant then sold for money which he then used for his own personal expenses unrelated to the work and operations of Washington University and its School of Medicine.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the defendant is pleading guilty is imprisonment of not more than Twenty (20) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than Three (3) years.

## 6. U.S. SENTENCING GUIDELINES: 2024 MANUAL:

The defendant understands that these offenses are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

    a.    **Chapter 2 Offense Conduct:**

**(1) Base Offense Level**: The parties agree that the base offense level is Seven (7), as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

    i.    Twelve (12) levels are added pursuant to Section 2B1.1(b)(1)(G), as the loss was more than $250,000, but less than $550,000.

**b.    Chapter 3 Adjustments:**

**(1)**    Two (2) levels are added pursuant to Section 3B1.3, because the defendant abused a position of private trust.

**(2)    Acceptance of Responsibility:** The parties agree that Three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    iii.    **Other Adjustments:** The parties agree that the following additional adjustments apply: None.

    iv.    **Other Adjustments/Disputed Adjustments:** It is the position of the United States that the two (2) level adjustment pursuant to U.S.S.G. Section 4C1.1 does not apply, as Defendant personally caused substantial financial hardship to the victim. Defendant reserves the right to argue that the adjustment does apply.

c. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is either Eighteen (18) or Sixteen (16).

d. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, either 18 or 16, and after determining

a Sentencing Guidelines range, sentences the defendant within or below those ranges, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an

order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried

by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

August 27, 2025
Date

HAL GOLDSMITH
Assistant United States Attorney

August 27, 2025
Date

GARY GRAJALES-REYES
Defendant

August 27, 2025
Date

ISAAC DODD
Attorney for Defendant