UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) NO. 4:25 CR 00451 HEA |
| GARY GRAJALES-REYES, | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District and, for its Sentencing Memorandum, states to this Honorable Court as follows:

1. Pursuant to the applicable Statutes and Sentencing Commission Guidelines, and based upon Defendant's underlying criminal conduct here, Defendant Grajales-Reyes' criminal conduct calls for a significant punishment. Application of the United States Sentencing Guidelines here advises a sentence of 27 – 33 months' imprisonment. This is based upon defendant's substantial criminal conduct here, the significant losses to the Medical School, and Defendant's abuse of his position of trust as the Director of a Research Laboratory within the School.

2. Title 18, United States Code, Section 3553(a) sets out the factors this Court should consider in fashioning an appropriate sentence. The first such factor to be considered is the nature of the offense, 18 U.S.C. 3553(a)(l). In this case, at the time of his criminal conduct, Defendant served as the Director of a Research Laboratory within the Washington University Medical School,

1

Department of Pathology & Immunology. He was a trusted member of the Medical School, provided with substantial discretion in his senior level position. While many defendants who appear before this Court charged with "white collar" crimes are educated and come from privileged backgrounds, Defendant Grajales-Reyes is a bit unusual in that regard. Not only had Defendant earned a bachelor's degree from the University of Puerto Rico, but he earned his MD, PhD from the very institution he targeted with his criminal conduct, Washington University School of Medicine. As an Assistant Professor at the Medical School, and trusted Director of his own Research Laboratory, Defendant's significant autonomy provided him the opportunity to carry out his fraud scheme, all the time collecting a substantial salary and benefits from the victim Medical School. As pointed out by Dr. Huang, Chair of the Department of Pathology & Immunology, Defendant "…had oversight of his own research team and controlled fiscal operations and financial systems…." (Government Exhibit 1)

3. The funds which Defendant caused the Medical School to lose through his fraudulent conduct consisted of research funding intended for the important research of Defendant's Laboratory and the overall Department. Significantly, those diverted and stolen funds were intended to support important patient care and research. Needless to say, the Department senior staff, and the employees supervised by Defendant, trusted Defendant completely, and relied upon him to handle his Research Laboratory's important day to day financial operations honestly and with integrity. Through his criminal conduct he took advantage of his position and caused the Medical School, the Department of Pathology & Immunology, and his Research Laboratory to lose in excess of $400,000.00 in research funds. In reselling the fraudulently obtained computer equipment Defendant "discounted" the cost of the computer equipment, and therefore he did not receive the full amount lost by the School of Medicine in his reselling. The significant funds he

2

did receive through his fraudulent scheme were used by Defendant for his own personal expenses unrelated to the work and operations of the Medical School and the Department of Pathology & Immunology. Significantly, these were not isolated incidents of fraud, as his criminal conduct involved the submission of 73 different false requisition requests, and Defendant's receipt and resale of approximately 761 different computer parts. Defendant's scheme remained undetected due to his control of the fiscal operations of his Research Laboratory, and his position of trust within the School and Department.

4. As the Chair of the Department has stated, "Dr. Grajales-Reyes' crimes have damaged the reputation of the Department and its programs, both within and outside the University community." "Dr. Grajales-Reyes' crimes also have had a devastating personal effect on his colleagues. Many employees in the Department remain distressed and traumatized by this entire incident. For years they worked side by side with Dr. Grajales-Reyes, befriended him, supported him, and trusted him – not knowing that all along he was deceiving and betraying the trust his colleagues and the institution bestowed on him. It will take a long time for the Department, and particularly its people, to recover from Dr. Grajales-Reyes' misconduct." (Government Exhibit 1). The Executive Director of Compliance & Audit stated, "Many personnel expressed deep disappointment and genuine grief that a fellow researcher would misuse funds for personal benefit, compromising work meant to drive scientific discovery and improve public health." (Government Exhibit 2). She further stated, "…he embezzled more than $400,000 of University research funds, which resulted in significant financial harm and compelled the University to dedicate substantial time and resources to investigating his misconduct. For example, the Office of Compliance and Internal Audit alone was required to devote more than 500 hours to investigate, reconstruct, validate, and document the full extent of his misconduct and the resulting financial loss."

3

(Government Exhibit 2). Further, the University was required to terminate a grant from the National Institutes of Health, as Defendant was a principal investigator on that work, causing the additional loss of $87,545 in grant funding. (Government Exhibit 2).

5.  When all of the facts and circumstances are considered here, Defendant's criminal conduct has to be viewed as substantial. While receiving a generous salary and benefits from the victim University, defendant took advantage of his position of trust. Defendant lied to those who relied upon him, and caused significant financial losses to a non-profit research based Medical School and its patients who relied upon the School's research efforts aimed at increasing public health. Thus, there are real victims in this case, who were denied much needed funds. The Victim Impact Statements submitted by Washington University and its Medical School speak for themselves, but clearly Defendant's criminal conduct has had a devastating effect on that Institution, its Medical School, and its renowned Department of Pathology & Immunology, along with its employees and patients.

6.  This Court's sentence should also afford adequate deterrence to criminal conduct, 18 U.S.C. 3553(a)(2)(B). As stated previously, this Defendant was the Director of a Research Laboratory at the Medical School. He abused that position of trust in carrying out his extensive scheme to defraud. This Court should fashion an appropriate sentence and punishment not only to deter this Defendant from future criminal conduct, but in order to deter other individuals in similar trusted senior level positions from committing similar crimes. Unfortunately, one need only look to the many recent prosecutions right here in the Eastern District of Missouri involving internal employee schemes and embezzlements to grasp the significance of these types of crimes, and the need for adequate punishment to deter these types of defendants and others.

7.  Defendant has an advisory guideline sentence range under the United States

Sentencing Commission Guidelines of 27 – 33 months in prison.  It is the government's position that justice and fairness require such a sentence in this case.  Such a sentence by this Court will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for defendant's criminal offenses as is required by 18 U.S.C. 3553(a)(2)(A).

WHEREFORE, the United States of America prays that this Honorable Court sentence Defendant to a term of imprisonment within the advisory sentencing guidelines as appropriate under the facts and circumstances presented here, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

*/s/Hal Goldsmith*
HAL GOLDSMITH #32984MO
Assistant United States Attorney
111 S. 10th Street, Room 20.331
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the counsel for defendant.

/s/ Hal Goldsmith
HAL GOLDSMITH
Assistant United States Attorney